IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL P. MELIUS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 12-848 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2013, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, denied. The Commissioner's decision of July 16, 2010, will be vacated and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed his pending application for SSI on October 21, 2008, and his pending application for Title II benefits on December 1, 2008, both alleging a disability onset date of April 2, 2004, due to a back injury, a leg injury and a learning disorder. Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on January 25, 2010, at which plaintiff failed to appear. As plaintiff's counsel was present, the ALJ proceeded with the hearing and questioned the vocational expert. The ALJ subsequently accepted plaintiff's explanation for not appearing at the January 25, 2010, hearing, and a second hearing was held before the ALJ on June 22, 2010, at which plaintiff and his mother appeared and testified. On July 16, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On April 19, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 31 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c) and 416.963(c). Plaintiff has a high school education and has past relevant work experience as a heavy laborer, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and considering the testimony of plaintiff, plaintiff's mother and the vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of degenerative disc disease, degenerative joint disease and obesity,[1] those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1, 20 C.F.R. Subpart P, Regulations No. 4.

The ALJ also found that plaintiff retains the residual functional capacity to perform light work that allows for sitting or standing alternatively every 30 minutes and that involves only occasional balancing, stooping, crouching, bending and kneeling. (R. 80). A vocational expert identified numerous categories of jobs which plaintiff could perform based upon his age, education, work experience and residual functional capacity, including marker, ticket seller and information clerk. Relying on the vocational expert's testimony, the ALJ found that while plaintiff cannot perform his past relevant work, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial

---

[1] The ALJ also found that plaintiff's mental impairments are not severe. Although plaintiff challenges this finding, a review of the ALJ's decision demonstrates that the ALJ properly analyzed the severity of plaintiff's mental impairments under the appropriate standard, 20 C.F.R. §§404.1520a(d)(1) and 416.920a(d)(1), and concluded that plaintiff has not more than "mild" limitations in any of the requisite functional areas and has had no episodes of decompensation. (R. 80). The court is satisfied that this finding is supported by substantial evidence.

gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[2] for determining whether a claimant is under a disability. 20 C.F.R. §404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises several challenges to the ALJ's finding of not disabled: (1) the ALJ erred at step 2 in failing to consider whether plaintiff's sleep apnea is a severe impairment; (2) the ALJ improperly evaluated the medical evidence from his treating physician and from a state agency reviewer; and, (3) the ALJ erred in failing to consider all of plaintiff's impairments, both severe and non-severe, in combination in assessing his residual functional capacity. Because the ALJ failed to acknowledge, let alone evaluate, plaintiff's medically determinable impairment of sleep apnea, either alone or in combination with plaintiff's other impairments, both severe and not severe, at any step in the sequential evaluation process, this case must be remanded to the Commissioner for further proceedings.

It is axiomatic in social security cases that, although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and the reasons for

---

[2] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell, 347 F.3d at 545-46. Additionally, when there is evidence of a disabling mental impairment, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. 20 C.F.R. §§404.1520a and 416.920a; Plummer, 186 F.3d at 432.

discounting that evidence. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). Where the ALJ fails to consider and explain the reasons for discounting all of the relevant evidence before him, he has not met his responsibilities under the Act and the case must be remanded with instructions "to review all of the pertinent medical evidence, explaining any conciliations and rejections." Burnett v. Apfel, 220 F.3d 112, 122 (3d Cir. 2000).

Here, the ALJ did not consider all of the pertinent medical evidence. In particular, the record contains the results of a polysomnography study assessing plaintiff with mild obstructive sleep apnea-syndrome. (R. 427-28). The report indicates that plaintiff has "abnormal sleep architecture with a reduction in REM latency and increase in REM sleep" and an "abnormal respiratory disturbance index, primarily in the form of obstructive sleep apneas and hypopneas." (R. 427). The report also notes that a "reduction in REM latency and increased REM may sometimes be seen in endogenous depression" and that a "[c]linical correlation is suggested." (Id.)

The foregoing report constitutes, at a minimum, "medical evidence consisting of signs, symptoms and laboratory findings" of a medically determinable impairment (20 C.F.R. §§404.1508 and 416.908) that the ALJ failed to address at all in his decision, either at step 2 to ascertain whether sleep apnea is a severe impairment, at step 3 to determine whether it meets or equals a listing, or at step 5 to ascertain whether plaintiff's sleep apnea, alone or in combination with his other impairments, might result in any additional limitations in plaintiff's residual functional capacity. The ALJ's failure to consider plaintiff's medically determinable impairment of sleep apnea at any step of the sequential evaluation constitutes reversible error that necessitates a remand in this case.

On remand, the ALJ first must consider at step 2 whether plaintiff's sleep apnea is a severe impairment,[3] and, if he determines it is not severe, he must explain his reasons for so finding. If he determines that sleep apnea is a severe impairment, he must then proceed to step 3 and determine whether plaintiff's sleep apnea, either alone or in combination with plaintiff's obesity, meets or equals Listing 3.10.

Listing 3.10 specifically addresses sleep-related breathing disorders such as sleep apnea, which "are caused by periodic cessation of respiration associated with hypoxemia and frequent arousals from sleep." 3.00(H). The Listings note that in some individuals the disturbed sleep pattern may cause daytime sleepiness with chronic pulmonary hypertension and/or disturbances in cognitive functioning, which in turn can affect memory, orientation and personality.[4] Here, the sleep study results suggest a "clinical correlation between plaintiff's abnormal sleep architecture and endogenous depression." (R. 427).

In addition, at step 3 the ALJ must explicitly undertake an analysis as to whether sleep apnea, in combination with obesity, meets or equals Listing 3.10. The regulations note that the "combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately." 3.00(I). Accordingly, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when

---

[3] At step 2 of the sequential evaluation process, the ALJ must determine whether a claimant's impairment is "severe" as defined in the Act. 20 C.F.R. §§404.1520 and 416.920. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1521(a) and 416.921(a). The step 2 inquiry is a de minimus screening device and, if the evidence presents more than a slight abnormality, the step 2 requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546. Importantly, "[r]easonable doubts on severity are to be resolved in favor of the claimant." Id. at 547.

[4] In this regard, the court notes that Listing 3.10 is to be analyzed under either Listing 3.09 (chronic cor pulmonale) or Listing 12.02 (organic mental disorders). The regulations recognize that daytime somnolence may be associated with disturbance in cognitive vigilance and that impairment of cognitive function is to be evaluated under Listing 12.02. See Appendix 1, §3.00(H).

assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, [the ALJ] must consider any additional and cumulative effects of obesity." Id.; SSR 02-1p.

Even if the ALJ determines that plaintiff's sleep apnea is not a severe impairment, he still must proceed to step 5 and reconsider his residual functional capacity finding. Pursuant to SSR 96-8p, in assessing residual functional capacity, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are 'not severe.'" The ruling recognizes that "in combination with limitations imposed by an individuals other impairments, the limitations due to such a 'not severe' impairment ... may narrow the range of other work that the individual may still be able to do." Id. Accordingly, on remand the ALJ must determine if plaintiff's sleep apnea, whether severe or not, either alone or in combination with all of plaintiff's other impairments, both severe and not severe, results in any additional restrictions on plaintiff's ability to perform work-related functions. See Diaz v. Commissioner of Social Security, 577 F.3d 500 (3d. Cir. 2009).

In doing so, the ALJ must specifically address all of the relevant medical evidence and explain his reasons for rejecting or discounting any particular evidence. In particular, the ALJ must explain what impact, if any, plaintiff's sleep apnea may have on his evaluation of the opinion of state agency reviewer Sharon Becker Tartar, Ph.D., who opined that plaintiff has moderate limitations in concentration, persistence and pace, and plaintiff's treating physician, Dr. Shaughnessy, who indicated that plaintiff's symptoms "frequently" would interfere with the attention and concentration needed to perform simple work tasks. As noted earlier, the Regulations recognize that "a disturbed sleep pattern may cause daytime sleepiness with chronic pulmonary hypertension and/or disturbances in cognitive functioning, which in turn can affect memory,

orientation and personality" and the sleep study results further suggest that there is a correlation between plaintiff's sleep difficulties and depression. (R. 427).

Accordingly, the ALJ should re-analyze the reports of Drs. Becker Tartar and Dr. Shaughnessy in light of plaintiff's medically determinable impairment of sleep apnea and consider what, if any, additional restrictions are necessary to account for that impairment, either alone or in combination with plaintiff's severe physical impairments, including obesity, as well as his not severe mental impairments. The ALJ, of course, does not have to accept any findings from any medical source, so long as he adheres to the standards set forth in the regulations for evaluating medical evidence, 20 C.F.R. §§404.1527(d)(2) and 416.927(d)(2), and gives some indication of the evidence he rejects and his reasons for rejecting it.[5]

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

*Gustave Diamond*
Gustave Diamond
United States District Judge

---

[5] The Commissioner attempts to brush aside the ALJ's failure to address plaintiff's sleep apnea by arguing that plaintiff has failed to establish any functional limitations resulting from that impairment beyond those already incorporated in the RFC assessment. However, it is not the province of this court to re-assess plaintiff's residual functional capacity and determine whether there are, or are not, other limitations resulting from a medically determinable impairment that the ALJ ignored entirely in rendering his decision.

cc: Joy A. Johnston, Esq.
Johnston Law Offices
P.O. Box 248
Sharpsville, PA 16150

Colin Callahan
Assistant United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219